UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARJORY HUTCHISON,

|  |  |
|---|---|
| **Plaintiff,** | CIVIL ACTION NO. 18-cv-12112 |
| **v.** | DISTRICT JUDGE LAURIE J. MICHELSON |
| COMMISSIONER OF<br>SOCIAL SECURITY, | MAGISTRATE JUDGE MONA K. MAJZOUB |
| **Defendant.** | |
| _____/ | |

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Marjory Hutchison seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 16).  Plaintiff has also filed a reply to Defendant's Motion for Summary Judgment.  (Docket no. 17.)   The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**.

## II.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on January 17, 2012, alleging that she has been disabled since November 21, 1998, due to epilepsy.  (TR 166-67, 190, 194.)  The Social Security Administration denied Plaintiff's claims on April 25, 2012, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 105-15, 116-17.)  On April 30, 2013, Plaintiff appeared with a representative and testified at a hearing before ALJ Ethel Revels, at which she also amended her alleged onset date to January 1, 2011.  (TR 53-103.)  ALJ Revels subsequently issued an unfavorable decision on August 6, 2013, which the Appeals Council declined to review.  (TR 1-4, 41-49.)

Plaintiff then commenced an action for judicial review in this court on November 14, 2014, *Hutchison v. Comm'r of Soc. Sec.*, No. 14-cv-14390, which the parties stipulated to remand for further administrative action.  (TR 527-29.)  On July 29, 2015, District Judge John Corbett O'Meara entered an Order and Judgment Remanding the Case under Sentence Four per the Parties' Stipulation.  (TR 527-29.)  Specifically, Judge O'Meara ordered the Commissioner to further evaluate and specify the weight given to the opinion of Dr. Samuel, further consider Plaintiff's residual functional capacity (RFC), and obtain supplemental testimony from a vocational expert (VE) to clarify the effect of the assessed limitations on Plaintiff's occupational base, as appropriate.  (TR 528.)  The Appeals Council subsequently vacated ALJ Revels' August 6, 2013 decision and issued an order in furtherance of the court's order.  (TR 522-26.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Jeanne M. VanderHeide, on March 10, 2016.  (TR 466-506.)  On April 14, 2016, ALJ VanderHeide issued an unfavorable decision with regard to Plaintiff's claim.  (TR 399-411.)  The Appeals Council declined to review this decision on May 2, 2018.  (TR 387-91.)  Plaintiff then commenced

the instant action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 15 at 5-8) and the ALJ (TR 404-08, 411) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant incorporates the ALJ's recitation of the facts into her brief.  (Docket no. 16 at 6.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

ALJ VanderHeide found that Plaintiff did not engage in substantial gainful activity during the period from the amended alleged onset date of January 1, 2011, through the date last insured of September 30, 2012, and that Plaintiff suffered from the severe impairments of partial motor seizure disorder and anxiety disorder.  (TR 401-02.)  Next, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 402-03.)  The ALJ then found that, through the date last insured, Plaintiff had the following RFC:

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant cannot climb ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs.  The claimant should avoid even moderate exposure to excessive noise, chemicals, and other environmental irritants such as fumes, odors, dusts, and gases.  The claimant should avoid all use of hazardous machinery and all exposure to unprotected heights.  The claimant requires a "low stress job" (defined

as having only occasional decision-making and occasional changes in the work setting without fast-paced production demands).

(TR 403-10.)  Subsequently, in reliance on a VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 410-11.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2011, through the date last insured of September 30, 2012.  (TR 400, 411.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question,

"but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.  Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this case should be reversed and/or remanded for an additional administrative hearing pursuant to sentence four because (1) the ALJ erred in determining that Plaintiff's seizure impairment did not meet or medically equal Listings 11.02 and 11.03; (2) the ALJ erred in failing to accord adequate weight to the opinions and assessments of Plaintiff's treating physician; (3) the ALJ's finding that Plaintiff has the RFC to perform the exertional demands of light work is not supported by substantial evidence; and (4) the ALJ's credibility determination is not supported by substantial evidence.  (Docket no. 15 at 2-3, 8-26.)

1.      *The ALJ's Step-Three Determination*

Plaintiff argues that the ALJ erred by failing to find that her seizure impairment meets or medically equals Listings 11.02 and 11.03.  (Docket no. 15 at 8-13.)  At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his or her impairment meets or medically equals one of the listings in the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  A claimant must satisfy all of the criteria to meet a listing, or have impairments that are medically equivalent to or equal in severity and duration to the criteria of a listed impairment.  *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009).  "Moreover, all of the criteria must be met concurrently for a period of twelve continuous months."  *McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, at *8 (E.D. Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation")).  It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

An ALJ is not required to "address every listing" or "discuss listings that the applicant clearly does not meet."  *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013).  But the ALJ should discuss the relevant listing where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under that listing.  *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).  To raise a "substantial question" as to whether he has satisfied a listing, "the claimant must point to specific evidence that demonstrates he

reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014).  "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three."  *Id.* at 433.

> Listings 11.02 and 11.03 contained the following criteria at the time of the ALJ's decision:
>
> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, Sections 11.02 and 11.03 (Eff. August 12, 2015 to May 23, 2016).

Here, in determining that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, the ALJ explained:

> With respect to Listings § 11.02 and § 11.03, the medical evidence presented does not sufficiently document the frequency or pattern relating to the claimant's seizure episodes, and she repeatedly described significant improvement through use of anti-seizure medications.  In addition, the claimant reported that she has not experienced a grand mal seizure since 1999, and the evidence does not support a finding that her partial seizure episodes posed a significant interference with her activity during the day, particularly prior [to] September 30, 2012, [] the date last insured.  In fact, as recently as March of 2012, the claimant reported independence with a wide range of daily activities including dressing, bathing, driving her daughter to school, shopping in stores, meal preparation, riding a bicycle, going for walks, performing yard work, playing softball, housecleaning, and paying bills, among others (5E).  Accordingly, the undersigned concludes that the claimant's

> seizure disorder did not meet or medically equal the criteria for § 11.02 or § 11.03
> of the Listings of Impairments during the relevant period.

(TR 402.)

Plaintiff challenges the ALJ's finding that the medical evidence does not sufficiently document the frequency or pattern of her seizure episodes and the ALJ's characterization of her daily activities. (Docket no. 17 at 4, 5.) But even if Plaintiff could establish that the ALJ erred in this regard, Plaintiff does not provide any analysis or "point to specific evidence that demonstrates [s]he reasonably could meet or equal *every* requirement of [Listings 11.02 or 11.03]." *See Smith-Johnson, supra* (emphasis added). In fact, Plaintiff provides no analysis of her impairments in relation to the criteria of Listing 11.02 except to point out that she previously suffered grand mal seizures. With regard to Listing 11.03, Plaintiff asserts that she suffers from ongoing myoclonic seizure activity in the form of twitching in her left arm and leg, and she argues that it significantly interferes with her daily activities. (Docket no. 17 at 4, 5.) She also asserts that she has been diagnosed with epilepsy and argues in conclusory fashion that it is the combination of her epilepsy, partial motor seizure disorder, and anxiety that meet or medically equal the criteria of Listing 11.03. (*Id.* at 2-3, 5.) "[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). More importantly, Plaintiff does not show that her myoclonic seizure activity causes alteration of awareness or loss of consciousness as is required to meet Listing 11.03, and the record evidence shows that it does not. (*See* TR 292, 674.) Thus, Plaintiff has failed to meet her burden of demonstrating that her impairments meet or medically equal Listings 11.02 or 11.03, nor does she raise a substantial question in this regard. Accordingly, any deficiency in the ALJ's evaluation of Plaintiff's impairments under Listings 11.02 and 11.03 at step three of the sequential evaluation process does not constitute reversible error, and Plaintiff's Motion should be denied with regard to this issue.

Plaintiff also argues that the ALJ should have obtained an updated medical opinion on the issue of medical equivalency because the State agency medical consultant's April 24, 2012 determination was only based on a limited portion of Plaintiff's medical record.  (Docket no. 15 at 11-12; docket no. 17 at 4-5.)  In support, Plaintiff cites Social Security Ruling (SSR) 96-6p, which provides that an ALJ "must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  SSR 96-6p, 1996 WL 374180, at *3-4 (S.S.A. July 2, 1996).  SSR 96-6p is discretionary in that it "requires that the ALJ obtain an updated medical opinion *only* when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment."  *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012) (emphasis in original, citation omitted).  And for the ALJ's decision to be erroneous based upon his failure to seek an updated medical opinion, Plaintiff has to show that the additional evidence does, in fact, call for an updated opinion.  *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009).

As Plaintiff points out, State agency medical consultant Dale Blum, M.D. made an unfavorable disability determination on April 24, 2012, based on a limited portion of Plaintiff's medical record dated through November 14, 2011, which did not include subsequent treatment records from her treating physician or her treating physician's June 26, 2012 opinion.  (Docket no. 15 at 11-12; docket no. 17 at 4-5, TR 105-14.)  Plaintiff argues that had Dr. Blum reviewed all of the record evidence generated through the date last insured of September 30, 2012, it is very likely that he would have found that Plaintiff's impairments were equivalent to Listing 11.03.  (Docket no. 17 at 5.)

Plaintiff's argument in this regard is conclusory and does not satisfy her burden under *Kelly* of demonstrating that the evidence calls for an updated opinion. Conversely, Defendant points out that there are only two treatment records related to Plaintiff's seizures from the relevant period that Dr. Blum did not review, and that those records document normal findings on physical and neurological examination, except for Plaintiff's left arm contractures of which Dr. Blum was aware, and an absence of seizures. (Docket no. 16 at 11 (citing TR 112, 308-09, 312).) Plaintiff also had a normal EEG on March 9, 2012, which failed to reveal any focal, lateralized, or epileptiform abnormalities; a mildly abnormal EEG on November 6, 2012, which also failed to reveal any focal, lateralized, or epileptiform abnormalities; and a normal EMG on November 30, 2012. (TR 304-07.) The ALJ explicitly considered most of this evidence in her decision but did not find it necessary to obtain an updated opinion. And to the extent that Plaintiff relies on her treating physician's opinion to support the instant argument, the ALJ also considered and properly discounted that opinion, as discussed further below. Accordingly, the ALJ did not err by not obtaining an updated medical opinion on the issue of medical equivalency in this case. Plaintiff's Motion regarding the ALJ's step-three determination should be denied.

2.  *The ALJ's Assessment of Plaintiff's Treating Physician's Opinion*

Plaintiff argues that the ALJ failed to accord adequate weight to the opinion of her treating physician, Devprakash Samuel, M.D. (Docket no. 15 at 13-19; docket no. 17 at 6-7.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to

assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that

weight.  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ summarized and assessed Dr. Samuel's opinion as follows:

On June 26, 2012, Dr. Samuel prepared a medical source statement on behalf of the claimant. On this form, Dr. Samuel indicated that the claimant experiences localized temporal lobe seizures four times per week on average, with each seizure lasting 30 minutes to 2 hours, and occurring in the "evening to early a.m." Dr. Samuel also noted that the claimant suffers postical manifestations of confusion, exhaustion, irritability, and severe headaches for 20-30 minutes, along with seizure medication side effects including lethargy and lack of alertness. Dr. Samuel noted that the claimant was capable of "low stress jobs," but that her seizures are likely to disrupt the work of coworkers and precluded exposure to noise, fumes, gases, and hazards (including heights and use of power machinery). Finally, he concluded that the claimant cannot operate a motor vehicle "for six months following a seizure," and that she would require 1-2 unscheduled breaks and was likely [to] be absent from work "about three times per month" (5F, 6F).

. . . .

As to the medical source statement provided by Dr. Samuel, the undersigned finds several inconsistencies therein which weigh heavily against his proposed limitations. First, there is no evidence documenting that the claimant's seizure episodes last 30 minutes to 2 hours with up to 30 minutes of postical manifestations. Indeed, the EEG study, performed several years after Dr. Samuel's statement (and allegedly following a "worsening" of episodes) failed to document a single partial seizure episode during the first 24 hour period in which she was taking the recommended dosage of her medication. Moreover, the seizure events that occurred on the second and third days generally consisted of an 8-12 second episode of leg or arm shaking with hand grasping or fanning, without a single episode of "loss of awareness," and no reports of postical leg or arm pain. The undersigned also recognizes that, as recently as October of 2015, the claimant advised Dr. Barkley that she is able to plan for episodes by taking Klonopin during an anticipated of stress [sic]. She also reported that she is able to manage associated clonic activity by restraining her arm or leg for a short period until the episodes pass. The undersigned also recognizes that the claimant has not suffered a grand mal seizure since 1999, and there are no records of her being placed on driving restrictions at any point since the alleged onset date. In addition, the claimant

testified that she was able to work a reduced schedule 5 days per week until June of 2014, and there are no medical records or other documentary evidence supporting Dr. Samuel's conclusions regarding her proposed absenteeism or need for unscheduled breaks. The undersigned also recognizes that none of the treatment summaries prepared by Dr. Samuel between November of 2010 and November of 2012 document adverse side effects from medications. In any event, the environmental and "low stress" limitations included in the above-referenced RFC adequately account for the alleged adverse medication side effects. For these reasons, the undersigned gives little weight to Dr. Samuel's medical source statement, as a majority of his proposed limitations are either inconsistent with, or uncorroborated by, the medical and other documentary evidence of record.

(TR 407, 409-10.)

Plaintiff argues that the ALJ did not comply with controlling Sixth Circuit law in rejecting Dr. Samuel's opinion. (Docket no. 15 at 17.) She also argues that "[d]ocumentary evidence is not a requirement for discounting the opinions of a treating physician." (*Id*. at 15.) Plaintiff bases her argument on a case from the Seventh Circuit, which provides that an ALJ cannot disregard a physician's evidence simply because there are no detailed notes to back it up or identical evidence from other physicians. (Docket no. 15 at 15 (citing *Herrmann v. Colvin,* 772 F.3d 1110, 1111 (7th Cir. 2014)).) *Herrmann* is not binding authority on this court, but as persuasive authority it is nevertheless distinguishable from the instant matter because the ALJ in this case did not discount Dr. Samuel's opinion for a lack of detailed supporting notes or simply because there was no identical evidence from other physicians. Here, the ALJ discounted Dr. Samuel's opinion because it was not well supported by and it was inconsistent with the record evidence, including the objective testing, Plaintiff's hearing testimony, and Dr. Samuel's own treatment notes.

The opinions of treating physicians "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286-87 (6th Cir. 1994). Here, the ALJ discounted Dr. Samuel's opinion regarding the frequency and duration of Plaintiff's seizure episodes because it

was inconsistent with an EEG study that was performed at a time when Plaintiff's condition had allegedly worsened but revealed seizure episodes that were less frequent and of shorter duration than Dr. Samuel had opined.  The ALJ also discounted Dr. Samuel's opinion in this regard because it was otherwise unsupported by documentary evidence.  The ALJ discounted Dr. Samuel's opinion regarding absenteeism as inconsistent with Plaintiff's testimony that she worked a reduced schedule five days per week during the alleged disability period and because it was unsupported by any medical records or other documentary evidence.  And the ALJ discounted Dr. Samuel's opinion regarding Plaintiff's medication side effects as inconsistent with his own treatment notes, which documented no adverse side effects between November 2010 and November 2012.  Indeed, in November 2010, May 2011, November 2011, May 2012, and November 2012, Dr. Samuel explicitly noted that Plaintiff was "tolerating Lamcital well with no side effects."  (TR 308, 312, 316, 318, 322.)

Plaintiff makes other arguments like, "it is unclear what weight was given to Dr. Samuel's opinions as the ALJ decision is completely silent," and "[t]here is no 'good cause' analysis, no explanation, or declaration that Dr. Samuel's opinions are inconsistent with the substantial evidence in the record."  (Docket no. 15 at 18, 19.)  These arguments are belied by even a cursory reading of the ALJ's assessment of Dr. Samuel's opinion.  The ALJ explicitly accorded "little weight" to Dr. Samuel's opinion, she explicitly stated that she found "several inconsistencies" in Dr. Samuel's opinion "which weigh heavily against his proposed limitations," and she specifically cited and discussed that inconsistent evidence.  (TR 409-10.)

Plaintiff also argues that it is not true that there is no documentation of the side effects from her medication because "one simply needs to see that Dr. Kut[, Plaintiff's] primary care doctor[,] had referred her to Dr. Kahlil due to arthralgia and myalgia in late 2012."  (Docket no. 17 at 6

(citing TR 382).)  Plaintiff does not explain how her medication side effects correlate to her tentative diagnoses of arthralgia and myalgia, however, to the extent that she alleges that arthralgia and myalgia are side effects of her medications, that does not render the ALJ's assessment of Dr. Samuel's opinion erroneous.  Dr. Samuel opined that Plaintiff's seizure medication caused lethargy and lack of alertness, not arthralgia or myalgia, and the ALJ properly discounted Dr. Samuel's opinion in this regard as inconsistent with his treatment notes.  There is no error here.

In her decision, the ALJ explicitly noted that Plaintiff began treating with Dr. Samuel, a neurologist, in 2005, and she summarized and discussed the nature and extent of Plaintiff's treatment relationship with Dr. Samuel throughout her decision.  The ALJ then assessed Dr. Samuel's opinion and found that it was not supported by and inconsistent with the record evidence. The ALJ provided specific examples of those inconsistencies and supported his assessment with other reasoning.  In sum, the ALJ considered the regulatory factors in assessing Dr. Samuel's opinion, and her reasons for discounting Dr. Samuel's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the she gave to Dr. Samuel's opinion; they therefore constitute good reasons under the regulations.  The ALJ's assessment of Dr. Samuel's opinion complies with the treating physician rule, and Plaintiff's Motion should be denied with respect to this issue.

### 3.    The ALJ's Assessment of Plaintiff's Subjective Statements

Next, Plaintiff argues that the ALJ's assessment of Plaintiff's credibility is not based upon substantial evidence.  (Docket no. 15 at 23-26.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  But these assessments are not insulated from judicial review.

Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's evaluation of an individual's symptoms must contain "specific reasons . . . be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at * 9 (S.S.A. Mar. 16, 2016). "It is not sufficient . . . to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In this case, the ALJ considered and discussed Plaintiff's hearing testimony and her other subjective statements in conjunction with the record evidence, and the ALJ found that Plaintiff's allegations concerning the duration, frequency, and severity of her partial seizures were

inconsistent with the evidence.  (TR 408.)  The ALJ then proceeded to explain her reasons for this finding over the next two paragraphs of the decision.  (TR 408-09.)  With regard to Plaintiff's activities of daily living, the ALJ reasoned that Plaintiff's seizures did not induce her to stop working as a school recess monitor until June of 2014.  She also reasoned that Plaintiff reported in her March 2012 function report that she was able to drive her daughter to school, clean her house, prepare two to three meals per day, go shopping in stores, clean her yard, use a lawnmower, and ride a bicycle.  The ALJ also relied on a treatment note from Dr. Samuels, in which Plaintiff attributed an increase in seizure activity to an increase in stress, but reported that she remained active and had a good sleep pattern.

Plaintiff qualifies the daily activities cited by the ALJ as "brief activities" that she attempted to do between her seizures and myoclonic activity, and she asserts that she otherwise limited her activities when she was alone.  She also asserts that all of the activities described required limited activity and extended breaks and that none of them rose to the level of full-time sustained work activities.  Plaintiff asserts that it appears that her daily activities were the basis of the ALJ's finding that Plaintiff was not credible, and she argues that the ALJ's refusal to find Plaintiff credible on the basis of her attempted daily activities is inappropriate and warrants remand.  (Docket no. 15 at 23-26.)

The ALJ, however, did not equate Plaintiff's ability to perform the aforementioned activities to an ability to complete a forty-hour workweek; the ALJ expressed that Plaintiff's ability to perform those activities was inconsistent with her allegations regarding the frequency, duration, and severity of her seizures.  (TR 408.)  Indeed, the ALJ was required to consider Plaintiff's daily activities as part of the credibility determination.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.

Moreover, the ALJ did not rely solely on Plaintiff's ability to perform daily activities in finding that Plaintiff's allegations were inconsistent with the record.  The ALJ also considered Plaintiff's March 2016 hearing testimony regarding the frequency of her seizures (multiple seizure episodes on a daily basis since August 2014) and found it to be inconsistent with the frequency she reported to her doctor in October 2015 (partial seizures three to four times a week).  (TR 408-09.)  The ALJ also found Plaintiff's hearing testimony regarding the frequency and duration of her seizures since August 2014 to be inconsistent with the objective testing performed that same month.  As the ALJ noted, the EEG studies failed to record a single seizure event while Plaintiff maintained her usual dosage of medication, and when her medication reached subtherapeutic levels, Plaintiff's seizure episodes lasted 12 to 18 seconds rather than the "more than a couple minutes" Plaintiff testified to.  (TR 409.)

The ALJ considered that stress and excitement precipitated and/or aggravated Plaintiff's seizures, but she also noted Plaintiff's admitted ability to control her seizures through medication or by supporting her left arm or leg until the clonic episode passes.  The ALJ also pointed out that Plaintiff's hearing testimony regarding her postictal symptoms – that she suffered excruciating left arm and leg pain for up to several hours after each episode – was inconsistent with her doctor's treatment note that Plaintiff "fades out just a little with some of her seizures."  Notably, Plaintiff does not challenge any of these additional inconsistencies identified by the ALJ.

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in her decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and SSR 16-3p.  Moreover, the ALJ supported her finding that the alleged frequency, duration, and severity of Plaintiff's seizures was not supported by the objective medical evidence or the treatment records

by explicitly discussing and citing to examples of inconsistency between Plaintiff's testimony and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's allegations regarding the frequency, duration, and severity of her seizures is supported by substantial evidence and should not be disturbed. Plaintiff's Motion should therefore be denied in this regard.

### 4.     The ALJ's RFC Assessment

Plaintiff argues that the ALJ's assessment that Plaintiff has the RFC to perform the exertional demands of light work is not supported by substantial evidence because the ALJ created an RFC that is consistent with the opinion of the State agency medical consultant but not with the opinion of her treating physician, Dr. Samuel. (Docket no. 15 at 19-23.) A large portion of Plaintiff's argument in this regard is duplicative of Plaintiff argument regarding the ALJ's assessment of Dr. Samuel's opinion, which was thoroughly addressed above. Plaintiff also argues that the ALJ is precluded from making the RFC assessment without some expert medical testimony or other medical evidence to support her decision.

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 (July 2, 1996). It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id.* "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

The ALJ may adopt an opinion of a medical or non-medical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record. But "[a]n ALJ has no obligation to conform his RFC finding to a physician's RFC assessment; as the Sixth Circuit has repeatedly noted, such a requirement 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Wagner v. Comm'r of Soc. Sec.*, No. 15-11553, 2016 WL 1729553, at \*12 (E.D. Mich. Mar. 22, 2016), *report and recommendation adopted,* No. 15-11553, 2016 WL 1721049 (E.D. Mich. Apr. 29, 2016) (quoting *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p, 1996 WL 374183 (July 2, 1996))). Moreover, the Sixth Circuit recently rejected an argument substantially similar to that advanced by Plaintiff – that once an ALJ decides to give no weight to the treating physicians' opinions regarding a claimant's ability to work, the ALJ is required to get the opinion of another physician before setting the RFC:

> We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ. *See Shepard v. Comm'r of Soc. Sec.*, 705 Fed.Appx. 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence").

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018). Essentially, at all times, the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence that he finds to be well supported and consistent with the record as a whole.

Here, the ALJ considered the seizure questionnaires completed by Plaintiff and her husband, Plaintiff's function report, Plaintiff's treatment records, the objective medical evidence, the medical opinion evidence from Drs. Blum and Samuel, Plaintiff's daily activities, and Plaintiff's hearing testimony in assessing Plaintiff's RFC. (TR 404-10.)  In light of this evidence, she did not adopt either medical opinion in full but incorporated several of the functional limitations assessed by both Dr. Blum and Dr. Samuel into Plaintiff's RFC, among other things. It is Plaintiff's burden to prove that she has a more restrictive RFC than that assessed by the ALJ. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*, 203 F.3d at 392); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process).  Plaintiff, however, does not indicate what additional limitations the ALJ should have assessed to accommodate for her seizures, and she therefore has not met her burden in this regard.  Plaintiff has failed to show that the ALJ's RFC assessment is not supported by substantial evidence.

## VI.    CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 15) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 16).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 16, 2019          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 16, 2019          s/ Leanne Hosking
                                Case Manager